UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH SAGENDORF, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY HUTS, LLC, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 3:18-cv-623<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This is a collective action under the Fair Labor Standards Act brought by pizza delivery man Joseph Sagendorf. Presently before me is the Plaintiff's Motion for Step-One Notice Pursuant to the Fair Labor Standards Act [DE 29] and Joint Motion to Approve Stipulated Form of Notice of Collective Action [DE 32]. Defendants have consented to an order conditionally certifying this case as a collective action and authorizing the distribution of the notice and consent to join attached as DE 32-1. For the reasons enumerated below, I will grant both motions and conditionally certify this case under the FLSA.

**Background**

This action is brought on behalf of current and former individuals employed as delivery drivers by Defendants Quality Huts, LLC, Quality Huts East, LLC, Quality Huts, Indianapolis, LLC, Quality Huts Mid Atlantic, and Quality Huts Midwest, LLC (collectively "Quality Huts"). Defendants own and operate Pizza Hut franchise stores

nationwide. Those Pizza Huts employ delivery drivers to deliver pizzas and other food to customers' homes or work, maybe even to a courthouse.

The named plaintiff, Mr. Sagendorf, alleges that he and other similarly situated current and former delivery drivers were illegally denied minimum wage rates because they were not properly reimbursed for the required expenditures. Sagendorf was employed as a delivery driver at the Pizza Hut store in South Bend, Indiana, from approximately November 2017 to February 2018. Another delivery driver, Plaintiff Daniel Baer, has already joined this suit as an early opt-in.

As I mentioned earlier, Defendants employ drivers to deliver pizza and food to customers. Defendants require their delivery drivers to provide their own vehicles and the vehicles must be insured and kept in a safe, legally-operable condition. [Answ., DE 10, at ¶ 13.] Sagendorf alleges that Defendants pay all of their delivery drivers below minimum wage hourly rates, relying on a tip credit applied according to the time that they perform deliveries. [Compl., DE 1, ¶¶1-23; DE 29 Exs. C-D.] He claims the practical effect of using the tip credit is to standardize all the employees at the same nominal wage rate. Sagendorf claims that although drivers incur costs like gasoline, vehicle maintenance, insurance, depreciation, and other expenses, Defendants do not pay drivers for their actual out-of-pocket automobile expenses. For example, Defendants commonly pay the drivers $0.32 per mile, which Sagendorf claims is below the IRS rate of between $0.535 and $0.56 per mile. [DE 29 Exs. C, D.] This failure to reimburse, the argument goes, means the actual wages the delivery drivers received

"free and clear" fell below minimum wage.

The complaint states a claim under the FLSA and requests that the case proceed as a collective action under 29 U.S.C. § 216(b) on behalf of all delivery drivers of the Defendants who consent to joint the action (Count I). Sagendorf also asserts Indiana state law claims as a Rule 23 class action (Count II). But I note that in their joint motion to approve the stipulated form of notice of the collective action, the parties state that they have agreed to dismiss Count II, the Rule 23 class action for Indiana state law claims, with prejudice. [DE 32 at 2.] While the parties are commended for trying to work some things out in this litigation, it is not proper to dismiss a count with prejudice without filing a separate motion in accordance with Rule 41. *See* Fed. R. Civ. P. 41; N.D. Ind. L.R. 7-1. (requiring a separate motion for each request). As such, the parties are granted leave to file dismissal papers for Count II in accordance with the applicable rules.

**Discussion**

Under 29 U.S.C. § 216(b), an employee may bring an action to recover unpaid overtime compensation on "behalf of himself . . . and other employees similarly situated." This is known as a "collective action." *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (quoting 29 U.S.C. § 216(b)). No employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

3

Collective actions under the FLSA are fundamentally different than class actions under Federal Rule of Civil Procedure 23. Plaintiffs in a collective action must "opt-in" to the action to be bound by a judgment while plaintiffs in a Rule 23 class action must "opt-out." *See King v. General Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Because of the "opt-in" requirement, a representative plaintiff in a collective action has to be able to inform other individuals who may have similar claims that they may join his lawsuit. *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

Section 216(b) does not explicitly provide for court-ordered notice. Nonetheless, the Supreme Court has held that, in appropriate cases, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Such court-authorized notice serves the broad, remedial purpose of the FLSA and comports with the court's interest in managing its docket. *Id.* at 172-74.

District courts within the Seventh Circuit have commonly applied a two-step approach to determine whether an FLSA claim should proceed as a collective action. *See, e.g., Cramer v. Bank of Am., N.A.*, No. 12 C 8681, 2013 WL 6507866, at *1 (N.D. Ill. Dec. 12, 2013); *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1081 (N.D. Ind. July 27, 2009); *Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-CV-0049 DFH-TAB, 2005 WL 775931, at *2 (S.D. Ind. Mar. 15, 2005). First, the plaintiffs have to demonstrate, based upon "pleadings, affidavits, and declarations" that they are

4

"similarly situated" to "employees they seek to notify." *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2015 WL 365785, at *2 (W.D.N.Y. Jan. 27, 2015). If Plaintiffs make this relatively modest showing, then notice and an opportunity to "opt-in" can be sent to those employees who are similarly situated to the named plaintiff. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). The lenient standard applicable to the first stage "typically results in conditional certification" of a collective action. *Ruffolo v. LaSalle Group, Inc.*, No. 18 C 3305, 2019 WL 978659, at *2 (N.D. Ill. Feb. 28, 2019) (quotation omitted). The action then proceeds through discovery as a representative or collective action.

The second stage occurs only after the opt-in process is complete and the parties have taken discovery. *Cramer*, 2013 WL 6507866, at *2. The defendant may then ask the Court to "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (quotation omitted). At this second step, courts apply a more stringent test and consider whether any affirmative defenses have to be applied to individual plaintiffs, as well as fairness or procedural concerns. *Id.*

In this case, Defendants consent to an order conditionally certifying the case as a collective action under the FLSA. [DE 32 at 2.] I find this appropriate, as Plaintiff has provided declarations of other employees describing similar pay issues [DE 29-3, 29-4], colorably argued that a company-wide policy violates the FLSA, and showed that the

delivery drivers are similarly situated.

The Defendants have also consented to the notice and consent to join the case, both attached as Exhibit A [DE 32-1]. These will be sent to all current and former delivery drivers who did not execute valid arbitration agreements and who were employed by Defendants within three years preceding this order approving of the notice. [ DE 32 at 2.] I am cognizant that notwithstanding this stipulation to conditional certification, the parties acknowledge that, in the event the case does not settle, Plaintiff retains the burden to move for and obtain final collective action certification, and Defendants reserve the right to oppose that motion, and to file their own motion to decertify the collective action. [*Id.*]

**PURSUANT TO THE PARTIES' AGREEMENT, IT IS HEREBY ORDERED AS FOLLOWS:**

This matter is conditionally certified as a collective action under the FLSA, and the Plaintiff's Motion for Step-One Notice Pursuant to the Fair Labor Standards Act [DE 29] and Joint Motion to Approve Stipulated Form of Notice of Collective Action [DE 32] are GRANTED.

Exhibit A [DE 32-1] is approved as the authorized Notice and Consent to Join forms to be sent to all current and former delivery drivers who did not execute valid arbitration agreements and who were employed by Defendants within three years preceding the Court's Order approving notice (the "Potential Collective Action Members"). The Notice and Consent forms shall be sent by U.S. Mail and electronic

means to all Potential Collective Action Members.

Defendants are ordered to produce to Plaintiff's counsel, within 30 days following this Court Order approving notice, an Excel spreadsheet listing the names, last known addresses, last known email addresses, year of birth (for address verification purposes), employee ID number, dates of employment as a delivery driver, store location, and store number, for all Potential Collective Action Members. Plaintiff shall have 14 days after receipt of the spreadsheet to mail the notice and 14 days after the conclusion of the opt-in period to file any duly executed received notices. Potential Collective Action Members shall not be permitted to join this action unless their opt-in forms are: (i) duly executed; (ii) postmarked on or before the deadline in paragraph 11 of Exhibit A; and (iii) filed with the Court within 14 days of the conclusion of the opt-in period. Each Potential Collective Action Member for whom Plaintiff timely files a valid executed opt-in notice shall be referred to herein as an "Opt-in Plaintiff."

Subject to any objections regarding relevance, undue burden, or privilege, and following execution of a confidentiality agreement regarding the disclosure of information in this Action, Defendants agree to produce: (i) in PDF and Microsoft Excel format delivery and reimbursement data for all Opt-in Plaintiffs within 45 days of the close of the opt-in period; and (ii) relevant information relating to their delivery driver reimbursement practices. The parties agree that they will work cooperatively if there are difficulties in meeting this deadline or completing the pre-mediation exchange of information.

The parties shall mediate or engage in other good-faith negotiations within 30 days of Plaintiff's counsel's receipt of the data described in the above section.

These proceedings shall be STAYED while the parties send the agreed notice and then attempt to reach a settlement. If settlement is not achieved, the parties should notify the Court that settlement efforts were unsuccessful, and then the Court will set a date for a case management conference.

ENTERED: March 28, 2019.

                                          /s/   Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT