UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH SAGENDORF, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY HUTS, LLC, *et al.*,<br><br>Defendants. | CASE NO. 3:18-CV-623-PPS-MGG |

**ORDER**

On December 1, 2020, this Court held a video hearing to discuss with the parties their dispute over written discovery requests yet to be propounded upon individual opt-in plaintiffs in this hybrid collective action under the Fair Labor Standards Act ("FLSA") and class action under the Indiana Minimum Wage Law. The parties filed briefs outlining their positions, as ordered, on October 9, 2020. [DE 68, DE 69].

This case raises claims related to the reimbursement of expenses to pizza delivery drivers employed by Defendants, who have been joined in this collective action. The parties disagree as to whether Defendants are entitled to individualized discovery as to the expenses of each of the 351 opt-in collective action plaintiffs. Defendants contend that they need such information from each plaintiff as evidence to support their anticipated decertification motion. Specifically, Defendants argue that the individualized discovery is necessary for the similarly-situated analysis central to that type of motion. *See Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 104 (N.D. Ill. 2013);

*Biddings v. Lake County,* No. 2:09-CV-38-PRC, 2009 WL 2175584, at *3 (N.D. Ind. July 15, 2009). At the decertification stage of FLSA collective actions, the key question is whether a fact-specific inquiry is required for each plaintiff to prove the viability of his or her claim. *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346 (N.D. Ill. 2012) ("A collective action is not appropriate when determining whether a plaintiff has a viable claim requires a detailed, fact-specific inquiry." (citing *Alvarez v. City of Chicago,* 605 F.3d 445, 449 (7th Cir. 2010))). Notably, plaintiffs need only be similarly situated, not identically situated, to remain part of the class. *Id.* (citing *Russell v. Ill. Bell Telephone Co., Inc.*, 721 F.Supp.2d 804, 812 (N.D. Ill. 2010) (citing cases)).

Defendants assert the similarly-situated analysis establishes a proper purpose for individualized discovery as requested. Additionally, Defendants note that the opt-in plaintiff were told, before joining the case, that they might be expected to respond to written and oral discovery. As such, Defendants propose a process whereby a 2-1/2 page questionnaire, which includes some yes/no interrogatories and a request for production of assorted vehicle records[1], is first sent to all opt-in plaintiffs[2]. Under Defendants' plan, a grace period is afforded to all plaintiffs who do not respond by a designated deadline. If, however, an individual plaintiff does not respond after the grace period, Defendants' plan would have that plaintiff dismissed from the case.

---

[1] As reported as the hearing, Defendants seek production of multiple categories of vehicle records, including but not limited to each plaintiff's gas receipts, maintenance and repair receipts, purchase or lease documentation, records of insurance payments and car registration costs, and out-of-pocket vehicle expenses while working as a pizza delivery driver.

[2] The parties represent slightly different numbers of opt-in plaintiffs but any such distinction is of no bearing on the instant dispute.

Plaintiff, on the other hand, argues that representative discovery is more appropriate in this case. Plaintiff's argument suggests that Defendants' intended purpose for individualized discovery is improper and that generally speaking, individualized discovery is disproportional to the needs of this case. *See* Fed. R. Civ. P. 26(b). Accordingly, Plaintiff proposes a plan whereby a simple questionnaire, without the requests for production, would be sent to all opt-in plaintiffs. Plaintiff would promise to produce all responses to Defendants while guaranteeing a minimum response rate of 15% of the opt-in plaintiffs.[3] Further, Plaintiff suggests that the guaranteed minimum response rate would be a starting point from which Defendants could later seek additional discovery upon a showing of good cause. Under Plaintiff's plan, opt-in plaintiffs that do not respond to the questionnaire would not be dismissed automatically from the case, but could be subject to sanctions as appropriate under the applicable rules of civil procedure.

In support, Plaintiff focuses on the propriety of using expense estimates to prove FLSA claims with little, if any, attention to the similarly-situated analysis at the decertification stage. Plaintiff cites considerable authority showing that extensive individualized discovery into the plaintiffs' actual expenses has been rejected as unnecessary to prove FLSA claims by other courts in other "pizza cases." [*See* DE 69 at 2–3 n.1, 7–15 (collecting cases from multiple district courts)]. Plaintiff also cites cases

---

[3] Based on past experience in similar cases, Plaintiff's counsel represents that the response rate will likely be higher that 15%.

from multiple district courts that have implemented the representative discovery approach in other minimum wage/vehicle reimbursement cases. [DE 69 at 18–21].

The key question here, however, is whether Defendants' requested discovery into each plaintiff's expenses is relevant to the similarly-situated analysis that would arise in any decertification motion and whether the individualized approach favored by Defendants would be proportional to the needs of this case. Fed. R. Civ. P. 26(b). Plaintiff does not object on relevance grounds. Plaintiff tacitly accepts Defendants' claim that the similarly-situated analysis "will depend, in part, upon whether a fact-intensive inquiry is needed to evaluate the reasonableness of Defendants' approximation of the Plaintiffs' out-of-pocket expenses." [DE 68 at 18]. Plaintiff objects, however, to individualized discovery into those expenses as disproportional to the needs of this case. The Court agrees.

First, Defendants already possess considerable data about the plaintiffs' out-of-pocket expenses. As Defendants explain, they engage a third-party vendor—Motus, LLC ("Motus")—to approximate delivery drivers' out-of-pocket expenses. [DE 68 at 5]. Defendant indicate that the Motus software is "highly sophisticated" and considers "voluminous data" and a variety of factors in making its calculations. [DE 68 at 5]. Many of the distinctions Defendants appear to be attempting to clarify through the individualized discovery are among the categories of information evaluated by the Motus software.[4]

---

[4] Defendants state that the Motus software considers
    (1) the make and model of a delivery driver's vehicle; (2) the condition of a delivery
    driver's vehicle; (3) the driving conditions within the region of the country in which the

4

Second, individualized discovery in this case would undermine the purpose and usefulness of the collective action—to facilitate efficient resolution of common claims by a large number of plaintiffs with limited damages. *See Drollinger v. Network Global Logistics, LLC*, Civil Action No. 16-cv-00304-MSK-MJW, 2018 WL 1224889, at *2 (D. Colo. Mar. 9, 2018); *see also Perrin v. Papa John's Int'l, Inc.*, No. 4:09-CV-01335-AGF, 2014 WL 4749547, at *4 (E.D. Mo. Sept. 24, 2014). As the parties agree, plaintiffs typically worked as delivery drivers for Defendants for short periods of time—months not years—such that most only have low-value claims, often less than $500.

Third, Defendants' plan imposes sanctions in the form of dismissal from the class for opt-in plaintiffs who do not respond to the discovery questionnaire. Other courts have found discovery directed to FLSA opt-in plaintiffs improper when its purpose is to deprive opt-in plaintiffs of their class status. *Perrin*, 2014 WL 4749547, at *4; *Fast v. Applebee's Int'l, Inc.*, 06-4146-CV-C-NKL, 2008 WL 5432288, at *2 (W.D. Mo. Dec. 31, 2008). While Defendants do not assert dismissal of plaintiffs as a purpose of their discovery here, dismissal of plaintiffs would be the result. Moreover, discovery sanctions under Fed. R. Civ. P. 37 can include dismissal of parties, but "only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proved unavailable." *Wilson v. Lake Cnty. Sheriff's Dep't*, 2020 WL 4938650, at *1 (N.D. Ind. July 27, 2020) (quoting *Rice v. City of Chicago*, 333 F.3d 780,

---

delivery driver performs services; (4) fluctuating gasoline prices specific to a delivery driver's geographic area; (5) maintenance and tire costs, such as regular oil changes and tire rotations; (6) depreciation costs; (7) insurance costs; and (8) costs related to vehicle registration, title, inspection, and property taxes.
[DE 68 at 5].

785–86 (7th Cir. 2003)); *see also, e.g.,* Tyagi v. Smith, 790 F. App'x 42 (7th Cir. 2019). The grace period in Defendants' plan is insufficient to establish misconduct sufficient to justify the extreme sanction of dismissal.

Fourth, Defendants proposed requests for production accompanying their questionnaire is an unreasonably onerous on the opt-in plaintiffs. FLSA collective action discovery of opt-in plaintiffs should also be "simple enough that it does not require the assistance of counsel to answer." Perrin, 2014 WL 4749547, at *4 (quoting Fast, 2008 WL 5432288, at *2). Even if counsel cannot assist the opt-in plaintiffs in gathering the assorted receipts and vehicle records requested here by Defendants, the task of gathering that data is not a simple one. Moreover, the more extensive the discovery requests, the fewer responses will be generated. Thus, Defendants' requests for production are unduly demanding upon the plaintiffs and are actually counterproductive.

Based on these factors, a phased approach to Defendants' discovery related to the similarly-situated analysis is appropriate in this case. The parties are **ORDERED** to prepare interrogatories to be served upon all the plaintiffs. Plaintiff's counsel shall provide all responses received to Defendants, but ensure that a minimum of 20% of the plaintiffs respond. If Defendants cannot extrapolate the information needed to support their decertification motion from these responses, they may pursue further discovery to the extent of agreement among counsel. If counsel cannot agree, the Court will entertain a motion to pursue a second round of discovery upon a showing of good cause.

**SO ORDERED** this 4th day of December 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge