UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH SAGENDORF, individually and on behalf of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> QUALITY HUTS, LLC, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) No. 3:18-cv-623 ) ) ) ) ) ) |

### ORDER

Plaintiff, Joseph Sagendorf, filed an Unopposed Motion for Settlement Approval and Memorandum in Support. [DE 81.] This is a Fair Labor Standards Act ("FLSA") collective action, and the parties also filed a Settlement and Release Agreement under seal. [DE 82.] As indicated in the caption of the motion, Defendants do not oppose this motion. As detailed in the motion, the parties have reached a settlement of this conditionally certified FLSA collective action in which Plaintiffs allege that Defendants under-reimbursed their delivery drivers for the automotive expenses they incurred, which allegedly reduced their net wages below minimum wage (nominal wages - unreimbursed vehicle expenses = subminimum net wages).

A number of stipulations facilitated settlement negotiations in this litigation: the stipulation of conditional certification of Plaintiffs' FLSA claim [DE 29]; the stipulation of Plaintiffs' dismissal with prejudice of their state law claim for violations of the Indiana Minimum Wage Law [DE 35]; providing notice to all potential opt-in plaintiffs; and exchanging voluminous delivery and reimbursement data so that counsel for the

parties could analyze Plaintiffs' damage claims.

Plaintiffs' counsel mailed the court-approved notice to all putative opt-in plaintiffs. Approximately 400 delivery drivers, including Mr. Sagendorf, returned opt-in forms to assert their claims in the litigation. After two full-day mediation sessions with a retired United States Magistrate Judge, and following good faith negotiations, the parties agreed to a settlement that, in my opinion, provides substantial relief to the Opt-In Plaintiffs.

The settlement creates a Settlement Fund that will be paid to the Named Plaintiff and Opt-In Plaintiffs. Distributions from the Settlement Fund will be allocated to Opt-In Plaintiffs based on an equitable formula which mainly considers the total number of workweeks worked by each plaintiff.

## Procedural History

On August 14, 2018, Mr. Sagendorf filed a complaint against Defendants asserting an FLSA collective action under 29 U.S.C. § 216(b) and a class action under the Indiana Minimum Wage Law of 1965 ("IMWL"), Ind. Code § 22-2-2-1 *et seq.*, to recover unpaid minimum wages owed to himself and similarly situated delivery drivers employed by Defendants. Specifically, Sagendorf alleged that Defendants under-reimbursed their delivery drivers for the expenses they incurred delivering pizzas so, as a result, their net wages fell below the federal and state minimum wage. [DE 1.]

On March 19, 2019, after significant negotiation, the parties stipulated to conditional certification and dismissal of the Indiana state law claims, and asked me to approve the parties' proposed notice to putative opt-in plaintiffs. [DE 32.] I granted this

motion on March 28, 2019, and approved notice to delivery drivers who did not execute valid arbitration agreements and worked for Defendants within the three years preceding the order approving notice *(i.e.,* beginning March 28, 2016), and approved the consent to join form. [DE 33.]

As I mentioned before, the parties exchanged a substantial amount of discovery, including work time and pay records for the Opt-In Plaintiffs. After the parties evaluated this information, they participated in two days of mediation – the first on May 6, 2020, and following additional discovery, the second mediation on July 7, 2021.

The settlement agreement provided to me for review requires Defendants to create a fund that will provide payments to the Opt-In Plaintiffs in exchange for a limited release of their wage and hour claims under federal and state law. It also provides a service award to the named plaintiff, Sagendorf, who worked with counsel to resolve this litigation.

## Evaluation of the Fairness of the Settlement

First, I note that a final fairness hearing is not necessary in this case dealing only with the settlement of FLSA claims. *See, e.g., Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *2 (N.D. Ind. Jan. 4, 2019) ("the Court can review and approve the settlement agreement without holding a final fairness hearing . . . ."). In looking at the appropriate standard to apply, "[a] district court should approve an FLSA collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties." *Knox v. Jones Grp.*, No. 15-cv-1738, 2018 WL 3834929, at *1 (S.D. Ind. Aug. 31, 2017).

Here, there was a bona fide dispute. Sagendorf alleged that under-reimbursed automobile expenses caused minimum wage violations. Defendants denied the claims, asserting Plaintiffs were reasonably reimbursed for their vehicle costs and were compensated at or above the applicable minimum wage. This adversarial nature "provides some assurance of an adversarial context" and therefore "indicia of fairness to a settlement reached as a result." *Donaldson v. MBR Cent. Ill. Pizza, LLC*, No. 18-cv-3048, 2019 WL 4447969, at * 1(C.D. Ill. Sept. 17, 2019). Ultimately, if Plaintiffs' allegations proved correct, Defendants would face a potentially large monetary verdict, as well as an obligation to pay legal fees and costs incurred by Plaintiffs to prosecute the case through trial, and possibly an appeal. Conversely, if Defendants' defenses won the day, the Opt-In Plaintiffs would obtain no recovery at all. I have no trouble finding there was a bona fide dispute between the parties in this case.

I also believe the proposed settlement reflects a fair and reasonable resolution. When reviewing the fairness of a FLSA settlement, a court normally considers the following factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Heuberger*, 2019 WL 3030312, at *3 (citing *Burkholder v. City of Fort Wayne*, 750 F.Supp.2d 990, 993-94 (N.D. Ind. Nov. 1, 2010)). Considering these factors here, I find the proposed settlement

4

is reasonable.

This case involved complex issues of facts and law, voluminous data was exchanged by both sides, the underlying merits of the dispute were evaluated by both sides, and after the arm's-length mediations were conducted by an experienced mediator, he agreed that the settlement was beneficial and fair to both sides. The total settlement amount seems fair as it equates to approximately 85% of the maximum value of actual and liquidated damages allegedly suffered by the Opt-In Plaintiffs, as calculated by Plaintiffs' counsel. [DE 81 at 9.] While Defendants dispute Plaintiffs' damages estimate and assert that the total settlement amount constitutes approximately 40% of the maximum value of potential damages that the Opt-In Plaintiffs could recover in the event they prevailed on their claims, under either calculation, the settlement amount is a fair and reasonable compromise. *See, e.g., Besic v. Byline Bank, Inc.*, No. 15 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015) (approving settlement equal to 60% of lost wages); *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp.3d 1164, 1174-75 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26%-50% of the best possible recovery). Both sides were represented by experienced wage and hour counsel in this case. [DE 81 at 10-14.]

As mentioned before, the settlement agreement directs a service award. The amount detailed in the confidential settlement agreement is modest, and appropriate. Service awards, or incentive awards, "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). "This is especially true in employment litigation." *Briggs v. PNC*

5

*Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016). To determine if an incentive award is warranted, a district court evaluates "(1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929, at *2. In this case, Mr. Sagendorf sought and retained experienced counsel, filed this case, provided information necessary to prosecute the case, and participated in many phone calls and e-mail communications with counsel. [DE 81 at 15.] In light of his efforts and participation, payment of a service award in the amount reflected in the confidential settlement agreement is completely justified.

Plaintiffs' counsel should also recover their fees, which are reasonable in this case. The settlement agreement provides that Plaintiffs' counsel will apply to the court for an order approving payment of their fees for services, not to exceed 40% of the total settlement amount. The FLSA and IMWL contain fee and cost shifting provisions. 29 U.S.C. § 216(b); Ind. Code § 22-2-2-9. The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and enable Plaintiffs to vindicate their rights. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 643 (7th Cir. 2011).

To ensure a fee award is reasonable, I need to consider the factors enumerated in *Hensley*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

6

> fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasint, Inc.*, 578 F.3d 542, 544 & n. 1(7th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3 (1983)).

Plaintiffs' attorneys have really pioneered minimum wage claims based on under-reimbursed vehicle costs, and have obtained many key rulings in this field. Yet, there was still risk involved in this case since no court of appeals has addressed these issues and none of the other delivery driver cases managed by Plaintiffs' counsel have been submitted to a jury. Thus, I do find that the difficulty of the questions presented, and skill, experience, reputation, and ability of the attorneys support Plaintiffs' counsels' requested fee.

The Seventh Circuit has stated that "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436. Having reviewed the entire settlement agreement including the amount of recovery, I believe it is a good result for Mr. Sagendorf and the Opt-In Plaintiffs. While the amount of recovery from a trial could potentially have been larger, it also could have been little, if nothing at all. Some class members will receive substantial payments for their alleged unreimbursed vehicle expense. And while some may receive less than others (simply based on relatively shorter periods of employment) - all Opt-In Plaintiffs will be compensated as defined in the settlement agreement.

In considering the time and labor expended and preclusion of other work, I note

7

that Plaintiffs' counsel's firms combined have spent over 300 hours litigating this case, with no assurance of recovery. [Forester Decl., DE 81-4, ¶ 5; Potashnick Decl., DE 81-3, ¶ 16.] This includes time spent investigating the facts; preparing and filing pleadings; propounding discovery and dealing with discovery disputes; drafting a motion to compel (which was ultimately never filed); reviewing documents produced by the named Plaintiff, Opt-In Plaintiffs and Defendants; negotiating and filing a motion for conditional certification; analyzing Defendants' delivery, milage and reimbursement date; communicating with the named Plaintiff and Opt-In Plaintiffs, working on discovery responses; creating computerized damages models; researching and drafting two mediation statements and participating in those mediations; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement. [DE 81 at 19-20.]

In the declaration of Mark Potashnick, lead attorney, he indicates the firm has accrued a total lodestar of $82,250.50. [DE 81-3 at 18.] This constitutes 161.5 hours worked by Potashnick at a rate of $500/hr., and 12 hours worked by a paralegal at a rate of $125/hr. *Id.* Furthermore, in recent years, multiple courts have repeatedly approved Mr. Potashnick's rate of $500 per hour. [*Id.* at 16-17.] Mr. Forester's law firm billed in excess of 140 hours of attorney time, and Mr. Forester claims he decreased attorney billings that seemed duplicative or excessive, as well as wholly excluded time spent by his staff on this matter. [DE 81-4 at 3-4.] Applying the billing rates of both Mr. Forester and Mr. Potashnick to a "lodestar cross-check," reflects a multiplier of less than 1 based on counsel's time spent to date. Which is acceptable. *See Spano v. Boeing Co.,*

8

No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) (indicating that generally, a lodestar multiplier falling between 2 and 4.5 is reasonable). Additionally, this case naturally precluded counsel from pursuing other litigation opportunities.

Finally, in considering the last *Hensley* factor of awards in similar cases, I note that Plaintiffs' counsel's fees equal to 40% of the total recovery have been approved in the same claims against other pizza delivery companies. [*See* DE 81 at 20 and cases cited therein.] I believe the percentage method of recovery is a satisfactory method of fee recovery because, among other reasons, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred to the clients. For all of the reasons articulated above, I find that Plaintiffs' counsel's fees in the amount of 40% of the total recovery is appropriate.

Finally, the Settlement Agreement also provides that Plaintiffs' counsel will apply for an order approving the payment of their costs and expenses, not to exceed a reasonable amount of costs and expenses actually expended by, or on behalf of, the Settlement Class. [DE 82, ¶ 5.] Plaintiffs' attorneys request reimbursement for expenses reasonably incurred in prosecuting this case in an aggregate amount of $30,374.54. [DE 81 at 21.] Based upon the attorney declarations, I find these costs incurred were necessary and appropriate.

## Conclusion

For the reasons set forth above, I hereby find the settlement in this matter fair and appropriate, GRANT Plaintiffs' Unopposed Motion for Settlement Approval [DE

9

81] and DISMISS THIS MATTER WITH PREJUDICE. The Clerk is ORDERED to CLOSE this case.

>SO ORDERED.

>ENTERED: November 3, 2021.

>>/s/   Philip P. Simon
>>PHILIP P. SIMON, JUDGE
>>UNITED STATES DISTRICT COURT